DECISION AND JUDGMENT ENTRY
{¶ 1} John George Comsa, III, appeals his convictions for burglary, grand theft of a firearm, and having a weapon while under disability, all stemming from his theft of firearms from the residence of his former employer, Mary Ann Janes.
 {¶ 2} Comsa first contends the state failed to prove the stolen firearms were operable and thus, did not present sufficient evidence to sustain his convictions for grand theft of a firearm and having a weapon while under disability. The state presented evidence that Janes was a gun collector and had held a federal firearms license; the two different types of ammunition that could be used in one of the firearms; that the purpose of the scope on the other firearm was for target practice or hunting; Janes had taken steps to hide the weapons in her home; and that Comsa stole the firearms to get back into "gunrunning." Viewed in the light most favorable to the prosecution, this *Page 2 
evidence is sufficient to establish the operability of the firearms.
{¶ ?} Comsa next argues the trial court should have sustained his objection to testimony about his incarceration and given a curative instruction. However, given the serious nature of the crimes charged, it is self-evident Comsa had been arrested and in custody at some point. The isolated comment during trial did not violate the presumption of innocence. Furthermore, the comment did not reveal that Comsa was in custody during trial. And the trial court fully explained the presumption of innocence during voir dire and the jury instructions. This assignment of error is meritless.
 {¶ 4} Finally, Comsa argues the trial court erred when it ordered him to pay restitution in the amount of $2,350. Because, in ordering restitution, the trial court considered the value of weapons Comsa was not convicted of stealing, this assignment of error has merit.
 I. FACTS {¶ 5} Janes hired Comsa to assist in caring for her purebred dogs and to look after her property while she was away from home for extended periods. Janes had an extensive collection of firearms and had formerly held a federal firearms license. Janes had firearms hidden throughout her home and Comsa became aware of this. Because Comsa proved to be an unreliable employee, Janes fired him in October 2005.
 {¶ 6} On December 19, 2005, someone stole an Intra-Tech .22 from Janes' home. On December 29, 2005, someone broke into Janes' home by prying open a dining room window and stole a blued Colt .380, a stainless steel Colt .380, a Rossi .38, a Thompson Contender, and a Ruger Redhawk with scope. Janes was out of town at the time and Janes' employee, Priscilla Hansen discovered the crime the next morning. *Page 3 
Hansen called the Washington County Sheriffs office, which investigated. Deputies recovered the tip of a knife near the pried-open window and discovered distinctive muddy shoe imprints in the home.
 {¶ 7} Subsequently, Comsa's friend, Robert White, told detectives he had been in Comsa's apartment and Comsa had shown him a "Tech 9" and a "sawed-off shotgun." White also testified Comsa had made statements about getting back into gunrunning.
 {¶ 8} Detectives searched Comsa's apartment and seized a knife with a broken tip that matched the knife tip found in Janes' home. Detectives also found a pair of shoes with tread that matched the muddy prints found in Janes' home.
 {¶ 9} Comsa was indicted on the following charges: Count 1, burglary, R.C. 2911.12(A)(2) and (C); Count 2, grand theft, R.C. 2913.02(A)(1) and (B)(4), of an Intra-Tech .22; Count 3, grand theft, R.C. 2913.02(A)(1) and (B)(4) of the following firearms: a Thompson Contender, a stainless steel Colt .380, a blued Colt .380, a Ruger Redhawk, and a Rossi .38; Count 4, petty theft, R.C. 2913.02(A)(1) and (B)(1) and (2); Count 5, having a weapon while under a disability, R.C. 2923.13(A)(2) and (B); and Count 6, having a weapon while under a disability, R.C.2923.13(A)(2) and (B).
 {¶ 10} The matter proceeded to a jury trial. Upon Comsa's Crim.R. 29 motion, the court found the state presented sufficient evidence to prove the operability of only two of the firearms, the Thompson Contender and the Ruger Redhawk. Thus, the court granted Comsa's motion as to Counts 2 and 5 and ordered that references to all weapons except the Thompson Contender and Ruger Redhawk be stricken from Count 3 and Count 6. The jury convicted Comsa on Count 1, and Counts 3 and 6 as modified. *Page 4 
The jury found him not guilty of Count 4. The trial court sentenced Comsa and ordered him to pay restitution of $2,350.
 {¶ 11} Comsa filed this appeal and asserts the following assignments of error:
 I. THE TRIAL COURT VIOLATED JOHN COMSA'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN, IN THE ABSENCE OF SUFFICIENT EVIDENCE, THE TRIAL COURT ALLOWED THE JURY TO FIND MR. COMSA GUILTY OF GRAND THEFT OF A FIREARM, AND HAVING WEAPONS WHILE UNDER DISABILITY. FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION.
 II. THE TRIAL COURT VIOLATED JOHN COMSA'S RIGHTS TO THE PRESUMPTION OF INNOCENCE, DUE PROCESS AND A FAIR TRIAL WHEN IT OVERRULED HIS OBJECTION TO HIGHLY PREJUDICIAL TESTIMONY CONCERNING THE FACT THAT MR. COMSA WAS IN JAIL. FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTION 16, ARTICLE I OF THE OHIO CONSITUTION.
 III. THE TRIAL COURT'S ORDER OF RESTITUTION WAS UNSUPPORTED BY ANY COMPETENT, CREDIBLE EVIDENCE AND ITS IMPOSITION UPON JOHN COMSA WAS CONTRARY TO LAW. R.C. 2929.18.
 II. SUFFICIENCY OF EVIDENCE {¶ 12} A claim of insufficient evidence invokes a due process concern and raises the question of whether the evidence is legally adequate to support the jury verdict as a matter of law. State v. Thompkins (1997),78 Ohio St.3d 380, 386, 678 N.E.2d 541. This is a question of law that we review de novo. In analyzing the sufficiency of evidence to sustain a criminal conviction, an appellate court must construe the evidence in a light most favorable to the prosecution. State v. Hill (1996),75 Ohio St.3d 195, 205, 661 N.E.2d 1068. After construing the evidence in this manner, the test for determining sufficiency is whether any rational trier of fact considering the evidence could have *Page 5 
found all essential elements of the charged offenses proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 13} R.C. 2913.02(A)(1) provides, "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: Without the consent of the owner or person authorized to give consent[.]" Whoever violates this section is guilty of theft. R.C.2913.02(B)(1). If the property stolen is a firearm, a violation of R.C.2913.02 is grand theft. R.C. 2913.02(B)(4).
 {¶ 14} R.C. 2923.13 states:
 "(A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm * * * if any of the following apply:
 "* * *
 "(2) The person is under indictment for or has been convicted of any felony offense of violence * * *."
Whoever violates this section is guilty of having weapons while under disability. R.C. 2923.13(B).
 {¶ 15} To obtain a conviction under these statutes, the state must prove a firearm was involved. R.C. 2923.11 defines a firearm as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. `Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." R.C. 2923.11(B)(1).
 {¶ 16} In State v. Murphy (1990), 49 Ohio St.3d 206, 551 N.E.2d 932, syllabus, the Ohio Supreme Court held the state can prove operability through the testimony of *Page 6 
lay witnesses who were in a position to observe the instrument and the circumstances surrounding the crime. Moreover, R.C. 2923.11(B)(2) provides:
 "When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm."
 {¶ 17} A court evaluates the evidence of a firearm's operability by examining the totality of the circumstances. State v. McElrath (1996),114 Ohio App.3d 516, 519, 683 N.E.2d 430, citing State v. Murphy (1990),49 Ohio St.3d 206, 208.
 {¶ 18} Because none of the weapons stolen here were recovered, the state was limited to proving operability by circumstantial evidence. Comsa argues, and the state concedes, there is no evidence that the guns were fired or brandished. However, Comsa and the state disagree over whether the representations and actions of either person exercising control of the weapons was sufficient to prove operability. Comsa agues Janes never testified that she had fired either the Thompson Contender or Ruger Redhawk, but only testified in generalities about the weapons. The state relies on a telephone threat from Comsa that he would shoot Janes' dog, made after the weapons had been stolen; Janes' testimony concerning the ammunition that could be fired in the Thompson Contender, i.e., it could fire either .45 caliber handgun ammunition or .410 shotgun shells; and the scope mounted on the Ruger Redhawk, which Janes testified was used to sight in on a target for practice or hunting. The state also relies on White's testimony that Comsa intended to get back into gunrunning and that Comsa had shown him a sawed-off shotgun. (Janes testified the Thompson Contender could be mistaken for a sawed-off shotgun.) *Page 7 
 {¶ 19} Considering the totality of the circumstances, and viewing the evidence in the light most favorable to the prosecution, we conclude the state presented sufficient evidence to establish the operability of the Thompson Contender and Ruger Super Redhawk. While Janes never directly testified that she fired either weapon, she did testify as to the type of ammunition that she could use in her Thompson Contender. She indicated the barrel on her gun could be loaded with either a .45 caliber pistol ammunition or a .410 shotgun shell. She described the former as carrying "a solid lead bullet in it," and the latter as one that "has your BB's in it . . ." She also testified about the use of the scope on the Ruger Super Redhawk, which she indicated was used for target practice or hunting. Both of these activities involve shooting the gun, not merely possessing it as a collector's item or some other nonfunctional purpose. She identified State's Exhibit B-6 as containing two photos of a Ruger Super Redhawk pistol like hers. The top photo showed the pistol without a scope, while the bottom one was the pistol with scope. She indicated her pistol was equipped with a scope which she previously indicated was used "to sight in better" on intended targets. It is also significant that Janes took steps to conceal the weapons in her home. Janes had an extensive firearms collection and had formerly been a federally licensed firearms dealer. Thus, a reasonable jury could conclude Janes would neither collect nor conceal inoperable firearms. Given the totality of the circumstances, we agree with the trial court, which diligently researched the issue during trial, that the state produced sufficient evidence of the two guns' operability. Comsa's first assignment of error is meritless. *Page 8 
 III. COMSA'S CUSTODY {¶ 20} The state called Linda Walters, a friend of Comsa, to testify regarding telephone conversations she had with Comsa in January 2006. During the course of direct examination, the following exchange occurred:
 "Q. Okay. When was the last time you spoke to John Comsa.
 "A. Last time I spoke?
 "Q. Uh-huh.
 "A. When I visited him in jail It was probably-"
Comsa's counsel objected to Walter's reference to Comsa being in custody and the trial court overruled the objection. Comsa argues the trial court's ruling and failure to give a curative instruction eroded his presumption of innocence.
 {¶ 21} In State v. Williams (2003), 99 Ohio St.3d 439, at 453, the Ohio Supreme Court rejected the argument Comsa makes, stating:
 "When a defendant is being tried for aggravated murder, it is self-evident that he had been arrested. Evidence about a defendant's arrest and ensuing custody does not contravene the presumption of innocence. Further, the jury was not informed that Williams was in custody during the trial, only that he had been in custody when arrested. In any event, the presumption of innocence was fully explained in the voir dire and the jury instructions.
 "Precedent, cited by Williams, relating to a defendant's being tried in prison clothing or appearing while shackled has no relevance here. Cf. Estelle v. Williams (1976), 425 U.S. 501, 504, 96 S.Ct. 1691, 48 L.Ed.2d 126. The fact that the jury knew that Williams had been arrested for the crimes for which he was being tried is simply not comparable to a jury's seeing a defendant in shackles. Nothing in the record suggests that the trial's result was affected by the disclosure that police had arrested Williams * * *."
 {¶ 22} While the defendant in Williams was charged with aggravated murder, there is no reason a different rule should apply in this case. Comsa was charged with serious crimes and it was self-evident he had been arrested. Walter's reference was *Page 9 
brief and did not indicate when she had visited Comsa and thus, did not inform the jury that Comsa was in custody at the time of trial. And, as in Williams, the trial court fully explained the presumption of innocence in voir dire and the jury instructions.
 {¶ 23} The trial court did not err in overruling Comsa's objection or in failing to give a curative instruction.
 IV. RESTITUTION {¶ 24} The trial court ordered Comsa to pay $2,350 in restitution to Janes. This sum included $650 for the Thompson Contender, $1000 for the Ruger Redhawk, $400 for the stainless steel Colt .380, and $300 for the Rossi .38. Comsa contends the court's restitution order was not supported by competent, credible evidence because the court ordered him to pay restitution for firearms he was not convicted of stealing, i.e., the stainless steel Colt .380 and the Rossi .38. The state counters that Comsa's burglary conviction supports the order of restitution for all four firearms.
 {¶ 25} R.C. 2929.18(A)(1) allows a court to order a defendant to pay restitution to the victim for actual economic loss caused by the crime for which the offender was convicted. R.C. 2929.18(A)(1); State v.Williams, 3rd Dist. No. 8-03-25, 2004-Ohio-2801, ¶ 23. As a matter of law, a court may not order an offender to pay restitution for damages arising from a crime for which the offender was not convicted. Thus, the issue under this assignment of error is whether economic loss for the stainless steel Colt .380 and Rossi .38 resulted as a direct and proximate result of Comsa's commission of the burglary offense.
 {¶ 26} Comsa was convicted under R.C. 2911.12(A)(2), which provides:
 "(A)No person, by force, stealth, or deception, shall do any of the following: *Page 10 
"* * * "(2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense[.]"
 {¶ 27} In this case, the burglary offense was completed when Comsa entered Janes' home with purpose to commit any criminal offense. Thus, Comsa's burglary conviction does not, in and of itself, support an order of restitution for economic damages for theft of firearms for which Comsa was not convicted. Therefore, the trial court erred in ordering Comsa to pay restitution for the stainless steel Colt .380 and Rossi .38. Thus, we reverse and remand for the sole purpose of entering a new order of restitution.
 JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CAUSE REMANDED. *Page 11