[Cite as *State v. Johnson*, 2016-Ohio-872.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No. 14CA010688 |
| | |
| Appellee | |
| | |
| v. | APPEAL FROM JUDGMENT |
| | ENTERED IN THE |
| ROBERT N. JOHNSON | COURT OF COMMON PLEAS |
| | COUNTY OF LORAIN, OHIO |
| Appellant | CASE No. 14CR089799 |

DECISION AND JOURNAL ENTRY

Dated: March 7, 2016

MOORE, Judge.

{¶1} Defendant-Appellant Robert N. Johnson appeals from the judgment of the Lorain County Court of Common Pleas. We reverse and remand the matter for proceedings consistent with this opinion.

I.

{¶2} In August 2014, an indictment was filed against Mr. Johnson alleging that, on May 30, 2014, he committed theft in violation of R.C. 2913.02(A)(1). The indictment further alleged that the property stolen was a firearm or dangerous ordnance, elevating the crime to a felony of the third degree. Accompanying the charge was a firearm specification.

{¶3} Mr. Johnson waived his right to a jury trial and the matter proceeded to a bench trial. The trial court found Mr. Johnson guilty of the charge and specification and sentenced him to an aggregate term of two years in prison. Mr. Johnson has appealed, raising three assignments of error for our review.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED WHEN IT DENIED [MR. JOHNSON'S] CRIM.R. 29 MOTION FOR ACQUITTAL BECAUSE THE STATE PRESENTED NO EVIDENCE THAT THE FIREARMS WERE OPERABLE.

{¶4} Mr. Johnson states in his first assignment of error that the trial court erred in denying his Crim.R. 29 motion because there was no evidence that the firearms were operable. However, as the substance of his argument is a claim that there was insufficient evidence to sustain the findings of guilty, we will address it as such.

{¶5} The issue of whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶6} Mr. Johnson's sole argument within this assignment of error is that there was insufficient evidence presented that the guns were operable. Mr. Johnson was found guilty of committing theft of a firearm in violation of R.C. 2913.02(A)(1), (B)(4). R.C. 2913.02(A)(1) states that, "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent[.]" R.C. 2913.02(B)(4) elevates the degree of the offense to a third-degree felony if the property stolen is a firearm or dangerous ordnance. R.C. 2913.01(EE) provides that the word "firearm" used in Chapter 2913 has the same meaning

as in R.C. 2923.11. Additionally, Mr. Johnson was found guilty of a firearm specification. *See* R.C. 2941.141. R.C. 2941.141(D) provides that "firearm[,]" as used in R.C. 2941.141, has the same meaning as in R.C. 2923.11.

{¶7}   Thus, for purposes of both the charge and the specification, a firearm means,

> any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. "Firearm" includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable.
>
> (2) When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm.

R.C. 2923.11(B); *see also State v. Hughes,* 9th Dist. Summit No. 27061, 2014-Ohio-4039, ¶ 21.

{¶8}   In determining whether a firearm is operable, the trier of fact examines the totality of the circumstances. *See Hughes* at ¶ 21; *see also Thompkins,*78 Ohio St.3d at 385 ("In determining   * * * whether the firearm was operable or capable of being readily rendered operable at the time of the offense, the trier of fact may consider all relevant facts and circumstances surrounding the crime * * *."). Thus, in order to demonstrate that Mr. Johnson committed theft of a firearm and was guilty of the firearm specification, the State was required to demonstrate that the property at issue was a firearm as that term is defined in R.C. 2923.11(B)(1).

{¶9}   Michael Wilburn testified that in May 2014, he was living in a house in Columbia Station with his wife, his son's girlfriend, Ashley Smith, and Mr. Johnson. In late May or early June 2014, Mr. Wilburn found a receipt in his car for the sale of some of his firearms. From the receipt it appeared that Ms. Smith sold the weapons to a Scott Bayer.

**{¶10}** Thereafter, Mr. Wilburn went into his bedroom where he kept the weapons and found that they were not there. Additionally, he noticed that a can of ammunition was missing and "probably cleaning supplies." He stated that no one was supposed to be in his room, but that it was accessible to Mr. Johnson because "the door had been kicked in; not by them, but by someone else." Mr. Wilburn probably saw the weapons last in early May 2014, but distinctly remembers that he saw them in "the storage area[]" just after Christmas 2013. He testified that he did not check his firearms very frequently but he liked "to look at them sometimes." Mr. Wilburn testified that he did not give Mr. Johnson permission to take the guns, sell them, or to keep the proceeds.

**{¶11}** Subsequently, Mr. Wilburn reported the theft to police, and Deputy Zara Hudson from the Sheriff's Department investigated and spoke to Mr. Bayer. Mr. Bayer testified that he owned a jewelry and coin exchange in Middleburg Heights. He indicated that Mr. Johnson had come into his shop on numerous occasions. According to Mr. Bayer, Mr. Johnson came into the shop on May 30, 2014, with some guns and ammunition he wanted to sell. He told Mr. Bayer that he had purchased a house from an elderly couple and they left the guns and ammunition in the basement. The couple allegedly told Mr. Johnson that he could do what he wanted with the items because the movers would not ship the weapons. During the attempted transaction with Mr. Bayer, Mr. Johnson revealed that he had a prior felony conviction. Thus, Mr. Bayer was not sure if he could legally buy the items from Mr. Johnson. Mr. Johnson then asked if Mr. Bayer could buy them from Mr. Johnson's wife. Mr. Bayer indicated that would be alright, and so Mr. Johnson left, and then returned with Ms. Smith. When they returned, Mr. Bayer testified that, Mr. Johnson conducted the negotiations, however, Mr. Bayer bought the items from Ms. Smith. A surveillance video of the transaction was admitted into evidence; however, the video contains

no audio. Mr. Bayer averred that the receipt did not list everything sold because he did not think it was necessary to put anything besides the guns on the receipt. Mr. Bayer also bought ammunition and a bayonet as part of the transaction. Mr. Bayer bought all of the items for $900. He testified that he did not plan to resell the items in his store; instead, it was his intention to keep the items for himself because he was a "gun collector." He described some of the guns as looking like older antique dueling pistols.

{¶12} Deputy Hudson recovered the following items from Mr. Bayer, which were ultimately returned to Mr. Wilburn: "One shotgun made by Ithaca Police model valued at $500; one Windham AR-15 valued at $1800; * * * two Navy Hawes du[e]ling revolvers, both valued at $200; one CZ model 70 semi-automatic pistol valued at $400; one * * * IAC Billerica shotgun, model 1897 valued at $500," and over a thousand rounds of unspecified ammunition valued at $1000. Deputy Hudson also spoke to Mr. Johnson who was in jail at the time. According to Deputy Hudson, Mr. Johnson admitted that he and Ms. Smith were staying at the Wilburn residence and that they took some of the guns to sell in order to have money to buy drugs.

{¶13} Even viewing the evidence in a light most favorable to the prosecution, we cannot say that the State presented sufficient evidence that the guns in this case were firearms as contemplated by R.C. 2923.11(B)(1); the State failed to present sufficient evidence that the weapons were operable or capable of readily being rendered operable. Neither the guns nor the ammunition was admitted into evidence. *See State v. Messer,* 107 Ohio App.3d 51, 55 (9th Dist.1995) (stating that admitting the gun into evidence would be sufficient to establish operability). There was no testimony as to whether the guns were loaded or unloaded or whether any of the ammunition recovered was of a caliber such that it could be used in any of the guns. *See id.* (noting that the fact that the gun was found loaded hidden under a mattress suggested

operability); *State v. Allah,* 4th Dist. Gallia No. 14CA12, 2015-Ohio-5060, ¶ 13 ("The jury had the actual weapons and could logically infer from the loading of one gun and the provision of ammunition for the other that both were capable of firing that ammunition."); *State v. Dickerson,* 11th Dist. Ashtabula No. 2013-A-0046, 2015-Ohio-938, ¶ 36 ("Because the firearm was loaded when Officer Mino found it, and the firearm was submitted into evidence, a reasonable jury could conclude the firearm was operable."). Additionally, Mr. Wilburn never testified what he used the guns for or whether they had ever been fired. *See State v. Boyd,* 6th Dist. Lucas No. L-97-1366, 1998 WL 833534, *3 (Dec. 4, 1998) ("Without more, we find that an owner's statement that he kept the stolen guns for hunting is insufficient to prove operability beyond a reasonable doubt."). Further, while the names of the weapons were mentioned at trial, merely naming the weapons has been held to be insufficient to demonstrate operability. *See State v. Henry,* 4th Dist. Gallia No. 10CA20, 2012-Ohio-371, ¶ 18 ("[W]e reject the state's argument that the jury could have reasonably inferred operability merely from the term 'muzzle loader with scope.'").

{¶14} The State asserts that the facts of this case are similar to those in *State v. Comsa,* 4th Dist. Washington No. 06CA21, 2007-Ohio-5561, in which the Fourth District concluded that there was sufficient evidence of operability presented. The evidence the *Comsa* court relied on was summarized as follows:

> While [the owner] never directly testified that she fired either weapon, she did testify as to the type of ammunition that she could use in her Thompson Contender. She indicated the barrel on her gun could be loaded with either a .45 caliber pistol ammunition or a .410 shotgun shell. She described the former as carrying "a solid lead bullet in it," and the latter as one that "has your BB's in it ..." She also testified about the use of the scope on the Ruger Super Redhawk, which she indicated was used for target practice or hunting. Both of these activities involve shooting the gun, not merely possessing it as a collector's item or some other nonfunctional purpose. She identified State's Exhibit B-6 as containing two photos of a Ruger Super Redhawk pistol like hers. The top photo

showed the pistol without a scope, while the bottom one was the pistol with scope. She indicated her pistol was equipped with a scope which she previously indicated was used "to sight in better" on intended targets. It is also significant that [the owner] took steps to conceal the weapons in her home. [The owner] had an extensive firearms collection and had formerly been a federally licensed firearms dealer. Thus, a reasonable jury could conclude [the owner] would neither collect nor conceal inoperable firearms.

*Id.* at ¶ 19.

{¶15} Further, while the *Comsa* court did not point to it in its analysis, in its opinion, the court did note that, in discussing operability, the State additionally relied on evidence that the defendant threatened to shoot the owner's dog after stealing the weapons and on testimony that the defendant intended to get back into "gunrunning[.]" *Id.* at ¶ 18.

{¶16} Even assuming we agreed with the reasoning of the *Comsa* court, we conclude the facts of the instant matter are distinguishable. Here, there was no testimony about what type of ammunition could be used in the guns, nor was there testimony about Mr. Wilburn's purpose for keeping the guns. While the State asserts that the guns were kept in a storage area in Mr. Wilburn's bedroom, and that such evidences operability, we are not persuaded. We note that the transcript is not clear that, when the guns were stolen in May 2014, they were being kept in a storage area. Mr. Wilburn indicated that he saw the weapons shortly after Christmas 2013, in the storage area, but did not indicate whether that storage area was in his bedroom or somewhere else. When Mr. Wilburn was asked about where he went to look for the guns when he saw the sales receipt, he stated he went to his bedroom. He did not further elaborate on whether they were in a storage area or how they were secured. He also indicated that the area was accessible by Mr. Johnson and the door had been kicked in by someone else. Thus, there was not any evidence that the guns were kept in a secure area.

{¶17} Moreover, we are not convinced by the State's argument that the sale of the guns to Mr. Bayer, a self-described gun collector, for his own use, provides sufficient evidence of operability. It would seem that someone who collects guns might be just as likely to seek out inoperable guns if there was something special or significant about them, such as being collector's items. We note that during his testimony Mr. Bayer described the dueling pistols as being older and antique-looking.

{¶18} Accordingly, we conclude that the State presented insufficient evidence that the guns were operable. Thus, it failed to demonstrate that the guns were firearms as that term has been defined in R.C. 2923.11(B). Therefore, the trial court erred in finding Mr. Johnson guilty of third-degree felony theft of a firearm and of the firearm specification. Mr. Johnson's first assignment of error is sustained and the matter is remanded for resentencing in accordance with this opinion.

## ASSIGNMENT OF ERROR II

> THE TRIAL COURT ERRED WHEN IT FOUND [MR. JOHNSON] GUILTY OF THE OFFENSE AND SPECIFICATION AS CHARGED IN THE INDICTMENT BECAUSE THERE WAS NO EVIDENCE THAT THE FIREARMS WERE OPERABLE.

## ASSIGNMENT OF ERROR III

> THE TRIAL COURT ERRED IN SENTENCING [MR. JOHNSON] TO THE SPECIFICATION BECAUSE IT IS UNCONSTITUTIONAL.

{¶19} Mr. Johnson argues in his second assignment of error that the findings of guilt are against the manifest weight of the evidence. He asserts in his third assignment of error that the firearm specification is unconstitutional. Given our resolution of Mr. Johnson's first assignment of error, his remaining assignments of error are moot and we decline to address them. *See* App.R. 12(A)(1)(c).

III.

**{¶20}** The judgment of the Lorain County Court of Common Pleas is reversed. This matter is remanded for resentencing consistent with this opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

CARLA MOORE
FOR THE COURT

WHITMORE, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

STEPHEN P. HANUDEL, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and NATASHA RUIZ GUERRIERI, Assistant Prosecuting Attorney, for Appellee.