[Cite as *State v. Hunter*, 2018-Ohio-4249.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | | C.A. No. 17CA0069-M |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| WILLIAM D. HUNTER | | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | | CASE No. 16 CR 0696 |

DECISION AND JOURNAL ENTRY

Dated: October 22, 2018

SCHAFER, Presiding Judge.

{¶1} Appellant-Defendant, William Hunter appeals his convictions in the Medina County Court of Common Pleas. We affirm.

I.

{¶2} Following the sale of drugs by an accomplice to a Medina County Drug Task Force informant, the Medina County Grand Jury indicted Hunter on the following four charges: (I) having weapons while under disability in violation of R.C. 2923.13(A)(3), a felony of the third degree; (II) receiving stolen property (motor vehicle) in violation of R.C. 2913.51(A), a felony of the fourth degree; (III) complicity to aggravated trafficking in drugs in violation of R.C. 2923.03(A)(2) and R.C. 2925.03(A)(1)/(C)(1)(a), a felony of the fifth degree; and (IV) complicity to trafficking cocaine in violation of R.C. 2923.03(A)(2) and R.C. 2925.03(A)(1)/(C)(4)(a), a felony of the fifth degree. Count III included a firearm specification pursuant to R.C. 2941.141(A). Count IV included a firearm specification pursuant to R.C.

2941.141(A) and forfeiture specifications pursuant to R.C. 2941.1417(A) and R.C. 2981.02(A)(1). Hunter entered a plea of not guilty and the matter proceeded through the pretrial process.

{¶3} The matter ultimately proceeded to a jury trial. After the prosecution rested its case, Hunter moved for acquittal pursuant Crim.R. 29 as to Counts I and II. The trial court denied the motion as to Count I, having weapons while under disability, and granted the motion as to Count II, receiving stolen property, and dismissed the charge. The jury subsequently returned a verdict finding Hunter (1) not guilty of Count I, having weapons while under disability; (2) guilty of Count III, complicity to aggravated trafficking in drugs and finding that Hunter did have a firearm on or about his person or under his control while committing the offense, (3) guilty of Count IV, complicity to trafficking in cocaine. Regarding the forfeiture specification attached to Count IV, the jury found that the property was not used or intended to be used in any manner by Hunter to commit or facilitate the commission of Count IV. The trial court thereafter sentenced Hunter according to law.

{¶4} Hunter filed this timely appeal, raising four assignments of error for our review.

II.

### Assignment of Error I

**The trial court erred by failing to grant a judgment of acquittal, pursuant to Crim.R. 29(A), on the charges, and thereafter entering a judgment of conviction of the offense as that [charge] was supported by sufficient evidence, in violation of [Hunter]'s right to due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution.**

{¶5} In his first assignment of error, Hunter contends that the State failed to present sufficient evidence to support the firearm specification since there was no testimony presented

regarding the operability of the firearm. Hunter does not challenge his conviction for complicity to aggravated trafficking in drugs nor his conviction for complicity to trafficking cocaine.

{¶6} A challenge to the sufficiency of the evidence to support a criminal conviction presents a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Upon review, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Although we conduct the review de novo, "we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570, C-120751, 2013-Ohio-4775, ¶ 33.

{¶7} This matter implicates the jury's finding that Hunter did have a firearm on or about his person or under his control while committing the offense of complicity to commit aggravated in drugs. "R.C. 2941.141(A) is a penalty enhancement statute which provides for the imposition of a one-year mandatory term upon any offender for having a firearm on or about the offender's person or under the offender's control during the commission of a felony." *State v. Collins*, 9th Dist. Lorain No. 14CA010687, 2015-Ohio-5175, ¶ 13, citing *State v. Ervin*, 93 Ohio App.3d 178, 179-180 (8th Dist.1994). "Firearm" is defined as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." R.C. 2923.11(B)(1). Pursuant to R.C. 2923.11, a "trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm" when determining whether the firearm at issue "is capable of expelling or propelling one or more projectiles by the action of an

explosive or combustible propellant[.]"  Thus, "[w]hen determining whether a firearm is operable, a trier of fact may consider all relevant facts and circumstances surrounding a crime." *Collins* at ¶ 13, citing *Thompkins* at 385.

{¶8}  On appeal, Hunter's sole contention is that no evidence, direct or circumstantial, was presented to show that the firearm recovered in this case was operable or could have been rendered operable.  However, a review of the record shows that Agent Carrell of the Medina County Drug Task Force testified that while conducting an inventory search of the vehicle Hunter was driving, he found a revolver with "four or six cylinders with bullets in it."  The handgun and bullets were admitted as evidence.  This Court has previously recognized that the admission of the gun itself "would be sufficient to prove operability."  *See State v. Messer*, 107 Ohio App.3d 51, 55 (9th Dist.1995), citing *State v. Rogers*, 68 Ohio App. 3d 4, 10 (9th Dist.1990), quoting *State v. Smith*, 9th Dist. Summit No. 14231, 1990 Ohio App. LEXIS 931 (March 14, 1990) (stating that the Supreme Court of Ohio in *State v. Gaines*, 46 Ohio St.3d 65, 69 (1989), inferred that the "introduction of the gun into evidence is sufficient evidence from which the trier of fact could find that the gun was operable."); *State v. Johnson*, 9th Dist. Lorain No. 14CA010688, 2016-Ohio-872, ¶ 13.  Similarly, some of our sister Districts have also held that where testimony established that a gun was loaded at the time of the offense and that gun was submitted into evidence, a jury could reasonably conclude that the firearm was operable. *See State v.Dickerson*, 11th Dist. Astabula No. 2013-A-0046, 2015-Ohio-938, ¶ 36 (concluding that because a firearm was loaded when the officer found it and the firearm was submitted into evidence, a reasonable jury could have concluded the firearm was operable); *State v. Allah*, 4th Dist. Gallia No. 14CA12, 2015-Ohio-5060, ¶ 13 (concluding that "[n]either testimony of test-firing nor operability reports are required to prove operability" and that where the jury had the

actual weapons, they "could logically infer from the loading of one gun and the provision of ammunition for the other that both were capable of firing that ammunition.").

{¶9}    Therefore, Hunter's first assignment of error is overruled.

### Assignment of Error II

**[Hunter]'s convictions are against the manifest weight of the evidence.**

{¶10} In his second assignment of error, Hunter contends that his convictions were against the manifest weight of the evidence.

{¶11} To determine whether a criminal conviction is against the manifest weight of the evidence, we "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" (Emphasis sic.) *Thompkins*, 78 Ohio St.3d at 387, quoting Black's Law Dictionary 1594 (6th Ed.1990). Nonetheless, "[a]n appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases." *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340.

### A. Complicity

{¶12}   Hunter was convicted of complicity to aggravated trafficking in drugs (fentanyl) and complicity to trafficking in cocaine. On appeal, however, Hunter argues that the weight of the evidence supports the conclusion that Deotto Thomas was the sole party responsible for the drug transaction. We disagree.

6

{¶13} R.C. 2923.03(A)(2) provides that "[n]o person, acting with the kind of culpability for the commission of an offense, shall * * * [a]id or abet another in committing the offense[.]" R.C. 2925.03(A)(1)(C)(1)(a) provides that

> [n]o person shall knowingly * * * [s]ell or offer to sell a controlled substance or a controlled substance analog[.] Whoever violates division (A) of this section is guilty of one of the following: If the drug involved in the violation is any compound, mixture, preparation, or substance included in schedule I or schedule II, * * * whoever violates division (A) of this section is guilty of aggravated trafficking in drugs.

Fentanyl is a schedule II controlled substance. R.C. 3719.41 (Schedule II(B)(9)). R.C. 2925.03(A)(1)(C)(4) provides that

> [n]o person shall knowingly * * * [s]ell or offer to sell a controlled substance of a controlled substance analog[.] Whoever violates division (A) of this section is guilty of one of the following: * * * [i]f the drug involved in violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of trafficking in cocaine.

"A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶14} "To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *State v. Johnson*, 93 Ohio St.3d 240, syllabus (2001). The defendant's intent may be inferred from the surrounding circumstances. *Id.*

{¶15} Thomas testified that he was Hunter's co-defendant and had pled guilty to two separate charges of drug trafficking. He stated that as part of a plea bargain, he agreed to testify

truthfully at Hunter's trial. Thomas then testified that on November 8, 2016, Hunter picked him up in a gold car and they were "riding around, chilling, smoking, doing things like that." While they were "riding around," Thomas received a call from a man asking if he could buy a certain amount of heroin and crack. Thomas did not know this man's name, but identified him as "the informant." The informant similarly testified that he did not know the name of the man he contacted, but stated he had gotten the man's number from his wife and that the contact was known as "D."

{¶16} Thomas testified that he did not have heroin or crack to sell, but that Hunter said he wanted the deal and would give Thomas thirty or forty dollars "for taking [him] out there and meeting the person." Thomas admitted on cross-examination that he had a history of drug dealing and had between two and five trafficking convictions. Thomas also admitted that he first told the police that all the drugs were his, but then changed his story and disclosed that Hunter "had to cover for [him]."

{¶17} Thomas testified that Hunter instructed Thomas to pick up a woman and to drive them to the meeting location, a fast food restaurant in Brunswick, because Hunter did not have a driver's license. Thomas testified that he did not know the woman, and although he referred to her as "Marie" throughout his testimony, she was identified at trial as Maria Gerino. Thomas testified that Hunter gave Gerino a little heroin, "just for the ride," before picking her up and that he would give her more on the ride back. On cross-examination, Thomas admitted that he "did not tell anyone" on the day he was arrested that Hunter had given Gerino heroin but was testifying regarding the heroin at that time "because it was asked."

{¶18} Thomas stated that the three of them (Thomas, Hunter, and Gerino) first went to the wrong restaurant. While at the wrong restaurant, Thomas observed Hunter give Gerino drugs

wrapped up in a piece of paper. Gerino then exited the car and walked toward the restaurant. The three eventually realized they were at the wrong location and upon Gerino's return to the vehicle, she stated that she did not want to stand outside any longer. Thomas stated that in response, Hunter told Gerino that "either she was going to get left or she wasn't going to get no crack or heroin." Gerino gave the drugs back to Hunter.

{¶19} Thomas testified that Hunter then drove the vehicle with Thomas in the front passenger seat and Gerino in the back left passenger seat to a location across the street from the correct fast food restaurant. Hunter handed the drugs back to Gerino; Gerino got out of the vehicle and walked to the restaurant. Gerino returned five minutes later and they drove off. Thomas did not remember whether or not Gerino handed Hunter money upon her return.

{¶20} The informant testified that he received a phone call from the same number he had used to contact "D," but that the caller was a woman. He further stated that he had consistent contact "back and forth" with the woman until she told him to meet her in the front of the correct location. The informant testified that he was waiting at the fast food restaurant when a woman "popped out of nowhere and she sold [him] the drugs, and that was that." The informant also stated that in his experience as a heroin addict it was not unusual for more than one person to be involved in a drug deal or that "somebody completely different" than the person expected would in fact appear. The informant stated that after the drug deal, he gave the drugs that he received to the Median County Drug Task Force.

{¶21} During cross-examination, the informant stated that he was a "paid source" and received one hundred dollars for the transaction at issue. He further testified that although he first spoke to a male, the only person he saw during the drug transaction was a woman. Although the informant testified during direct examination that he had received a phone call

from the woman using the same number he had originally used to contact "D," he stated on cross-examination that there were two different phone numbers. He further stated, however, that "D" told him, "I'm going to have you meet my girl."

{¶22} Maria Gerino also testified during the trial as a part of a plea bargain. Gerino stated that she had known Hunter for two or three years and had met him on the streets, but first met Thomas the day of the transaction at issue. Although Thomas's first name is "Deotto," Gerino referred to him as "Degotto" throughout her testimony. Gerino also testified that she had bought drugs from Hunter in the past. She stated that Hunter and Thomas picked her up in Hunter's car and Hunter asked her to drive them to Brunswick. She stated that Thomas wanted to "make a play," which she understood to mean "sell dope." Gerino testified that Thomas was the individual who originally gave her the drugs to sell to the informant despite having told the arresting officers that Hunter had given her the drugs. She later testified that the second time she exited the vehicle, it was Hunter who handed her the packages of drugs. Gerino further testified that Thomas was the individual who promised to give her drugs rather than Hunter, again contradicting her statement to police the night of the incident during which she stated Hunter promised her a "half a gram" for driving to Brunswick. During cross-examination Gerino also testified that she was not threatened with being left behind if she did not complete the drug deal despite her statement to police asserting otherwise. Regarding the changes in her story, Gerino said her statements to police the night of her arrest were either lies or she was confused because she was high. During cross-examination, Gerino agreed with defense counsel that it was fair to say that at the time of her arrest she was going to say whatever she thought they wanted to hear in order to increase the likelihood of going home. She denied being afraid of Hunter despite the

fact he had previously threatened her with a gun. She also stated that Hunter did not threaten her in any way regarding her testimony.

{¶23} Based on the testimony outlined above, we cannot say that the jury clearly lost its way in this matter. *See Thompkins*, 78 Ohio St.3d at 387; *Otten*, 33 Ohio App.3d at 340. Although Gerino and Thomas's testimony differed as to Hunter's involvement in the drug transaction, "[t]his Court has repeatedly held that the trier of fact is in the best position to determine the credibility of witnesses and evaluate their testimony accordingly." *State v. Johnson*, 9th Dist. Summit No. 25161, 2010-Ohio-3296, ¶ 15. "'[T]he jury is free to believe all, part, or none of the testimony of each witness.'" *State v. Clark*, 9th Dist. Wayne No. 14AP0002, 2015-Ohio-2978, ¶ 24, quoting *Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35. Moreover, "[a] verdict is not against the manifest weight of the evidence because the finder of fact chooses to believe the State's witnesses rather than the defendant's version of the events." *State v. Martinez*, 9th Dist. Wayne No. 12CA0054, 2013-Ohio-3189, ¶ 16. In this case, Gerino's testimony often contradicted her prior statement and the jury was free to question the credibility of her testimony. Furthermore, even if the jury were to believe all of Gerino's testimony regarding the transaction at issue, that testimony would still show that Hunter was driving the vehicle when Thomas and Hunter picked her up, Hunter was the individual who asked her to drive to Brunswick, Gerino then drove the vehicle she believed to be Hunter's to Brunswick, that Hunter drove the vehicle from the wrong location to the correct location, and that Hunter handed her the drugs once at the correct location.

{¶24} Therefore, Hunter's second assignment of error as it relates to his convictions for complicity is overruled.

## B. Firearm Specifications

**{¶25}** Hunter further argues that jury's finding on his firearm specifications are against the manifest weight of the evidence because the State did not present any evidence that Hunter possessed the firearm, no witnesses testified that they saw Hunter with the firearm, and no fingerprints were found on the firearm.

**{¶26}** Nonetheless, Hunter's manifest weight arguments regarding the firearm specification sounds in sufficiency. "A weight challenge tests the persuasiveness of the evidence the State produced while a sufficiency challenge tests the very production of that evidence. An argument that the State failed to prove * * * the elements of a crime is one sounding in sufficiency, not weight." (Internal quotations omitted.) *State v. Hayes*, 9th Dist. Summit No. 26388, 2013-Ohio-2429, ¶ 9. As Hunter's second assignment of error presents us with a challenge to the weight of the evidence, we must limit our review accordingly. *See State v. Poland*, 9th Dist. Medina No. 14CA0003-M, 2014-Ohio-5737, ¶ 24.

**{¶27}** In this case, Hunter was convicted of multiple attendant firearm specifications pursuant to R.C. 2941.141(A), which provides for the imposition of a one-year mandatory prison term if "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense."

**{¶28}** After a review of the record in this case, we cannot say that this is the exceptional case where the evidence weighs heavily against a conviction. *See Thompkins*, 78 Ohio St.3d at 387; *Otten*, 33 Ohio App.3d at 340. First, the circumstantial evidence in this case would have been sufficient for the jury to conclude that Hunter had a firearm under his control while committing complicity to traffic in drugs and complicity to traffic in cocaine. Specifically, Agent Carrell of the Medina County Drug Task Force testified that after the Brunswick Police

Department officers had performed a traffic stop and secured the defendants he conducted an inventory of the vehicle. In so doing, Agent Carrell "noticed that there was a handgun – a revolver" "on the passenger side rear on the door" of the vehicle. Although neither Thomas nor Gerino testified that they had seen Hunter with a gun during the transaction at issue, both testified that they had seen Hunter with a gun on prior occasions. Additionally, Gerino stated that although she did not see a gun, she did see Hunter reach into his pants and then drop something heavy behind the seat.

{¶29} Second, the only witness's credibility Hunter challenges on appeal is that of Thomas, stating that he has a history of dealing drugs including several trafficking convictions and that he went to prison in 2014 for having a weapon while under disability and "wanted to make sure the gun was not his." Nonetheless, Hunter has not contested the credibility of Agent Carrell's nor Gerino's testimony outlined above, nor has he stated in any way why it was improper for the jury to believe that testimony. *See Jenks*, 61 Ohio St.3d at paragraph one of the syllabus ("Circumstantial evidence and direct evidence inherently possess the same probative value * * * ."). As stated above, "'the jury is free to believe all, part, or none of the testimony of each witness,'" *Clark*, 2015-Ohio-2978 at ¶ 24, quoting *Jordan*, 2004-Ohio-7184 at ¶ 35, and "[a] verdict is not against the manifest weight of the evidence because the finder of fact chooses to believe the State's witnesses rather than the defendant's version of the events." *Martinez*, 2013-Ohio-3189 at ¶ 16.

{¶30} Therefore, Hunter's second assignment of error is also overruled as to the firearm specifications.

## Assignment of Error III

**The trial court committed reversible error when it failed to give the jury the accomplice testimony instruction.**

{¶31} In his third assignment of error, Hunter contends that the trial court erred when it failed to give a jury instruction regarding accomplice testimony. However, because Hunter has failed to preserve this issue for appellate review, we decline to consider it on the merits.

{¶32} A review of the record shows that Hunter did not object to the jury instruction presented to the jury in this case. As a result, he has forfeited all but plain error. *See State v. Fry*, 9th Dist. Medina No. 16CA0057-M, 2017-Ohio-9077, ¶ 20. Nonetheless, Hunter has not argued plain error on appeal and we decline to construct a plain error argument on his behalf. *See State v. Hairston*, 9th Dist. Lorain No. 05CA008768, 2006-Ohio-4925, ¶ 11, citing App.R. 16(A)(7).

{¶33} Therefore, Hunter's third assignment of error is overruled.

## Assignment of Error IV

**[Hunter] was denied effective assistance of counsel as guaranteed by Section 10, Article I of the Ohio Constitution and the Sixth and Fourteenth Amendments [of the United States Constitution].**

{¶34} In his fourth assignment of error, Hunter contends that his trial counsel was ineffective when he failed to request a jury instruction on accomplice testimony. We disagree.

{¶35} In order to prevail on a claim of ineffective assistance of counsel, Hunter "must establish (1) that his counsel's performance was deficient to the extent that 'counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment' and (2) that but for his counsel's deficient performance the result of the trial would have been different." *State v. Velez*, 9th Dist. Lorain No.13CA010518, 2015-Ohio-642, ¶ 18, quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This court need not address both prongs of the *Strickland* test if it should

find Hunter failed to prove either prong. *State v. Ray*, 9th Dist. Summit No. 22459, 2005-Ohio-4941, ¶ 10.

{¶36} Hunter's sole contention is that his counsel was ineffective for failing to request a jury instruction pursuant to R.C. 2923.03(D). That statute states:

> If an alleged accomplice of the defendant testifies against the defendant in a case in which the defendant is charged with complicity in the commission of or an attempt to commit an offense, an attempt to commit an offense, or an offense, the court, when it charges the jury, shall state *substantially* the following:
>
> "The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.
>
> It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth."

(Emphasis added.)

{¶37} However, a review of the record shows that the trial court did give a jury instruction substantially stating the required language. Specifically, the trial court stated:

> You are not required to believe the testimony of any witness simply because he or she was under oath. You may believe or disbelieve all or any part of the testimony of any witness because, in the end, it's your duty to determine what testimony is worthy of belief and what testimony is not worthy of belief.
>
> Now, you have heard testimony from Deotto Thomas, or Degotto Thomas, or any other iteration of Mr. Thomas' name, and Maria Gerino. These are other people who have pled guilty or are accused of crimes in this case. They're said to be accomplices.
>
> An accomplice is one who knowingly assists another in the commission of an offense.
>
> Whether Deotto Thomas or Maria Gerino or either or both were accomplices and the weight to be given to their testimony are for you to determine, but the testimony should be viewed with grave suspicion and weighed with great caution.

**{¶38}** Although a review of the record on appeal does not show that Hunter's trial counsel made a specific request regarding a jury instruction on accomplice testimony either in open court or by filing a motion, such an instruction was given. Under such circumstances we cannot conclude that Hunter was prejudiced in any way.

**{¶39}** Hunter's fourth assignment of error is overruled.

### III.

**{¶40}** Hunter's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

CARR, J.
TEODOSIO, J.
CONCUR.


APPEARANCES:

THOMAS REIN, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellee.