[Cite as *State v. Spy*, 2016-Ohio-2821.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 27450 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| KYLE J. SPY | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 2013 05 1448 |

DECISION AND JOURNAL ENTRY

Dated: May 4, 2016

MOORE, Presiding Judge.

{¶1} Appellant, Kyle Spy, appeals his convictions by the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} Around midnight on March 16, 2013, gunfire erupted on Wildwood Avenue in Akron. When police arrived at the scene, they found a crowd gathering around the body of a man who had been shot multiple times. The victim died shortly after being transported to the hospital, and witnesses soon identified Mr. Spy as the gunman. Mr. Spy was charged with murder in violation of R.C. 2903.02(A), accompanied by a firearm specification, and having a weapon while under disability in violation of R.C. 2923.13(A)(2). Mr. Spy pleaded no contest to the charge of having a weapon under disability, and the trial court found him guilty. A jury also found Mr. Spy guilty of murder. The trial court sentenced him to a prison term of 36 months with respect to having a weapon under disability and to a term of life in prison with parole

eligibility in 21 years with respect to the murder conviction. Mr. Spy appealed. His two assignments of error are rearranged to facilitate our discussion.

II.

## ASSIGNMENT OF ERROR II

> THE STATE OF OHIO FAILED TO ESTABLISH BEYOND A REASONABLE DOUBT WHEN VIEWED BY THE MANIFEST WEIGHT OF THE EVIDENCE THAT [MR.] SPY EITHER PARTICIPATED IN THE CRIMES CHARGED; THERE IS INSUFFICIENT EVIDENCE TO SUPPORT MR. SPY'S CONVICTION OF MURDER AND THUS [HIS] CONVICTION IS AG[A]INST THE MANIFEST WEIGHT OF THE EVIDENCE AND BASED ON INSUFFICIENT EVIDENCE THAT HE COMMITTED THE CRIME.

{¶3} In his second assignment of error, Mr. Spy has argued that his conviction for murder is based on insufficient evidence and is against the manifest weight of the evidence. Specifically, Mr. Spy has argued that there is insufficient evidence that he was the shooter and, in the alternative, that the conclusion that he did not act in self-defense was against the manifest weight of the evidence. We disagree.

{¶4} "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 9th Dist. Summit No. 24731, 2009-Ohio-6955, ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins*, at 390 (Cook, J., concurring). In reviewing the evidence, we do not evaluate credibility, and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The State's evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id*.

**{¶5}** When considering whether a conviction is against the manifest weight of the evidence, this Court's inquiry is different. In that situation, we must:

> review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction. *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

**{¶1}** R.C. 2903.02(A) provides that "No person shall purposely cause the death of another[.]" The identity of a perpetrator must be also proved by the State beyond a reasonable doubt. *State v. Flynn*, 9th Dist. Medina No. 06CA0096-M, 2007-Ohio-6210, ¶ 12. Like any other element of an offense, identity may be established through direct or circumstantial evidence. *Id.*, citing *State v. Gorgan*, 9th Dist. Medina No. 1824, 1990 WL 1771, *1 (Jan. 10, 1990).

**{¶2}** Witnesses at trial testified that on the evening in question, a group of people gathered near the intersection of Wildwood Avenue and Copley Road. The victim's mother drove through the neighborhood less than an hour before the shooting. She testified that she stopped to speak with her son, then saw Mr. Spy pull a gun out of a duffle bag. She recalled that when she told Mr. Spy to put the gun away, he leaned into her car with the gun behind his back and gave her a hug and kiss. She testified that as she drove away, she saw Mr. Spy make a gesture toward the victim that concerned her because "it was like he had a problem with my baby." As she drove away, she saw Mr. Spy put the gun around his neck with a strap.

**{¶3}** Mr. Spy's girlfriend was also in the area around the same time. According to her testimony, she handed a fast food order to Mr. Spy through the passenger's side window of her gold Chevy Malibu, and the victim approached her on the driver's side. The two spoke briefly, and she recalled that the victim, who she characterized as a "flirtatious type of person," laughed and reached into her bra to take the change from the fast food restaurant that she had placed there. She testified that Mr. Spy "gave [her] a look," and that as the victim turned and walked toward the back of the car, Mr. Spy walked in front of her car with a gun drawn. She saw Mr. Spy fire the weapon, then turned to see the victim lying on the ground behind her car. As she fled the scene, someone flagged her down so that Mr. Spy could get into her car. She then drove with Mr. Spy to her apartment. Other witnesses confirmed that they saw Mr. Spy with a gun and that he fled the scene in a light colored sedan driven by a woman.

**{¶4}** Mr. Spy's former girlfriend testified as a witness called by the trial court. On cross-examination, she acknowledged that Mr. Spy ended up at her apartment on the night of the shooting, where he showered and spent the night. She also testified that she spoke with Mr. Spy often while he was in jail awaiting trial, and she confirmed that during one such recorded conversation, Mr. Spy admitted that he shot the victim, but that he acted in self-defense. Although a handgun was found at the scene, experts testified that none of the bullets or shell casings that police recovered were fired from that weapon. Experts also testified, however, that a single weapon likely fired each bullet. The police officers who investigated the crime acknowledged that they did not recover the murder weapon.

**{¶5}** None of the State's witnesses testified that they saw the victim with a gun before the shooting occurred, but one defense witness supported the defense's theory that Mr. Spy acted in self-defense. Another man who claimed to be in the neighborhood at the time of the shooting

testified that he saw the victim and Mr. Spy arguing just before the victim aimed a gun at Mr. Spy. The witness saw Mr. Spy duck, heard gunfire, and then, like other witnesses, saw Mr. Spy flee towards a gold Chevy Malibu. The same witness testified that the victim did not have a good reputation, an assessment with which Mr. Spy's former girlfriend agreed.

{¶6} In light of the testimony at trial placing Mr. Spy in close proximity to the victim with a weapon at the time of the shooting, as well as Mr. Spy's own statement acknowledging that it was he who shot the victim, a jury could reasonably conclude that Mr. Spy was the shooter. Mr. Spy's argument that his murder conviction is based on insufficient evidence is, therefore, unpersuasive. His argument that the manifest weight of the evidence demonstrates that he acted in self-defense is also not well-taken. Of the witnesses who recounted the events at the scene of the murder, only one testified that the victim had a firearm, and it was that same witness who testified that he saw the victim exchange words with Mr. Spy before aiming a gun at him. Although the victim had gunshot residue on his hands, the State's expert witness explained that it was of negligible probative value because the residue could have come from either handling a gun or from being within the cloud of residue expelled by the gun within a distance of a few yards. The defense's expert testified that residue on the victim's hands could have come either from firing a gun or handling a gun, but not necessarily immediately before the incident. Further, the defense's expert did not rule out the possibility that a cloud of gunshot residue could impact a victim located more than two feet away from the weapon. In light of this evidence, we cannot conclude that the evidence weighs heavily against Mr. Spy's conviction for murder and that the jury lost its way.

{¶7} Mr. Spy's second assignment of error is overruled.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT VIOLATED [MR. SPY'S] RIGHT TO DUE PROCESS WHEN IT DENIED THE ADMISSION INTO EVIDENCE OF [HIS] EXHIBIT C (A PHOTO OF THE VICTIM, PRIOR TO HIS DEATH, BRANDISHING A REVOLVER).

**{¶8}** In his first assignment of error, Mr. Spy has argued that the trial court erred by excluding "a photo" of the victim that, according to his estimation, demonstrates that he brandished a revolver. A few points of clarification are necessary before we address this assignment of error. At issue is not a photograph of the victim, but a video that Mr. Spy's attorneys accessed through Facebook after the crime was committed. Along the same lines, Mr. Spy's statement that the depiction is of the victim "prior to his death, brandishing a revolver" could be misleading to the extent that it suggests the depiction is probative of whether the victim had a revolver on his person at the time of the incident in question. The video did not depict the victim at the scene.

**{¶9}** "The admission of evidence lies within the broad discretion of a trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶ 43, citing *State v. Issa*, 93 Ohio St.3d 49, 64 (2001). A condition precedent to admissibility is authentication or identification by way of "evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A). One means of authenticating evidence is through the testimony of a witness with knowledge of the matter. Evid.R. 901(B)(1).

**{¶10}** Mr. Spy attempted to introduce a silent video that, according to counsel, depicted the victim and two other individuals "apparently doing some sort of rap video or something like that, and [the victim was] waving a firearm and he's pointing actually a handgun * * * at the camera[.]" Counsel intended to authenticate the video through the testimony of Anthony

Cunningham, but acknowledged that neither counsel nor the witness had knowledge of where, when, under what circumstances, or by whom the video was made. In fact, it is unclear from the record whether the witness had ever seen the video at issue. According to counsel, his intention "was to ask Anthony Cunningham whether he's ever seen this video, if he recognizes [the victim], if he's ever seen [the victim] with this gun he's waving around in the video."

{¶11} Based on this proffer, the trial court did not abuse its discretion by concluding that Mr. Cunningham's testimony would be insufficient to authenticate the video, the nature of which was never clearly established. Because authentication is a condition precedent to admissibility, we need not address Mr. Spy's alternative argument that the trial court erred by excluding the video under Evid.R. 405. Mr. Spy's first assignment of error is overruled.

### III.

{¶12} Mr. Spy's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

HENSAL, J.
SCHAFER, J.
CONCUR.

APPEARANCES:

EDWIN C. PIERCE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.