[Cite as *State v. Irvine*, 2019-Ohio-959.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | | C.A. No. 28998 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| DAVON M. IRVINE | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR-2016-11-3764 |

DECISION AND JOURNAL ENTRY

Dated: March 20, 2019

CALLAHAN, Judge.

{¶1} Defendant-Appellant, Davon Irvine, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} At approximately 4:30 a.m., the police responded to a dispatch for a burglary in progress at the home of two brothers. When they arrived, the police found the brothers bloodied and bruised, having been pistol-whipped and bound with duct-tape and zip ties during the burglary. They learned that the younger brother had managed to free himself and run for help before returning for his older brother. Though the brothers identified the burglars as two males, they were initially unable to give the officers any descriptions of significant detail.

{¶3} As the investigation took shape, several additional pieces of information caused the police to suspect Mr. Irvine was one of the burglars. First, on the night of the burglary, the younger brother pointed the police to a female friend as a person of interest. That female, A.A.,

had been with the younger brother that evening and had spent much of it texting someone. She was not attacked when the burglary occurred and helped the burglars restrain the younger brother. Given her involvement, the police obtained her cell phone records and identified the phone number she had been texting that evening, as well as the content of those messages.

{¶4} The brothers provided the police with a second piece of information shortly after the burglary. Specifically, they brought the lead detective a picture that the younger brother had found on Facebook. The older brother believed that the picture depicted one of the burglars, and the detective was able to identify the man in the picture as Mr. Irvine. The police then obtained a different picture of Mr. Irvine and presented it to the older brother. Again, the older brother confirmed that Mr. Irvine was one of the burglars.

{¶5} Once the police had reason to suspect Mr. Irvine, they were able to find a connection between him and the cell phone number that A.A. had repeatedly texted on the night of the burglary. The number itself was associated with a TracFone, so no subscriber information was available. Even so, additional phone records evidenced exchanges between that same phone number and others associated with Mr. Irvine, including his mother and the mother of his child. Some ten months after the burglary had occurred, the police finally arrested Mr. Irvine. Mr. Irvine was apprehended in Texas even though he was subject to a court order that required him to remain in Ohio.

{¶6} A grand jury indicted Mr. Irvine on two counts of aggravated robbery, one count of aggravated burglary, two counts of kidnapping, and one count of having a weapon under disability. Additionally, firearm specifications were linked to all but one of his six counts. The matter proceeded to trial and, at its conclusion, the jury found Mr. Irvine not guilty of having a weapon under disability, but guilty of his remaining counts and specifications.

{¶7} The trial court merged Mr. Irvine's kidnapping counts and their attendant firearm specifications with his aggravated robbery counts and their attendant firearm specifications. It then sentenced him to ten years on each of his aggravated robbery counts, ten years on his aggravated burglary count, and three years on each of his three firearm specifications. The court ordered the terms for one of his aggravated robbery counts and its attendant firearm specification to run consecutively with the terms for his aggravated burglary count and its attendant firearm specification. It ordered him to serve the remainder of his terms concurrently with that sentence. Consequently, Mr. Irvine received a total sentence of twenty-six years in prison.

{¶8} Mr. Irvine now appeals from his convictions and raises nine assignments of error for this Court's review. For ease of analysis, this Court rearranges and consolidates several of the assignments of error.

II.

## ASSIGNMENT OF ERROR NO. 4

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S CRIM.R. 29 MOTION AT THE CLOSE OF THE STATE'S EVIDENCE; THE PROSECUTION FAILED TO PRESENT EVIDENCE SUFFICIENT TO SATISFY THE NECESSARY ELEMENT OF IDENTITY[.]

{¶9} In his fourth assignment of error, Mr. Irvine argues that the court erred when it denied his Crim.R. 29 motion for acquittal. Specifically, he argues that the State set forth insufficient evidence that he was the individual who perpetrated the crimes set forth herein. This Court disagrees.

{¶10} "'[This Court] review[s] a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence.'" *State v. Bulls*, 9th Dist. Summit No. 27029, 2015-Ohio-276, ¶ 6, quoting *State v. Frashuer*, 9th Dist. Summit No. 24769, 2010-Ohio-634, ¶ 33. Whether the evidence in a case is legally sufficient to sustain a conviction is a

question of law that this Court reviews de novo. *See State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy." *Thompkins* at 386. Although the standard of review is de novo, the appellate court does not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact. *State v. Tucker*, 9th Dist. Medina No. 14CA0047-M, 2015-Ohio-3810, ¶ 7.

{¶11} "The identity of a perpetrator must be proved by the State beyond a reasonable doubt." *State v. Moorer*, 9th Dist. Summit No. 27685, 2016-Ohio-7679, ¶ 24. "As with any other element, * * * identity may be proved by direct or circumstantial evidence, which do not differ with respect to probative value." *State v. Taylor*, 9th Dist. Summit No. 27273, 2015-Ohio-403, ¶ 9. Because Mr. Irvine limits his sufficiency challenge to the issue of identity, this Court confines its analysis to that issue. *See State v. Webb*, 9th Dist. Summit No. 27424, 2015-Ohio-2380, ¶ 6.

{¶12} As noted, the victims in this matter were two brothers who lived together at the time of the burglary. The younger brother testified that, on the night of the burglary, a woman he had known for about ten years approached him and accepted his invitation to come home with him. The two kept each other company into the early morning hours, but the woman, A.A., spent a significant amount of time texting on her phone. Eventually, the two took a brief trip to

the store. Upon their return, A.A. "was dragging behind" the younger brother by about five feet as he entered the house. Almost immediately thereafter, someone began pistol-whipping him. The younger brother testified that A.A. helped tie him up and watched him while two men burglarized the house, threatened his life, and discussed whether they should kill his older brother as a result of the older brother having seen their faces. Though the younger brother was in close proximity to the burglars at certain points, he admitted that he never had a good opportunity to see their faces.

{¶13} The older brother confirmed that he was at home when his younger brother arrived with A.A. and, later, when they left to go to the store. He recalled being down in the basement when he heard an odd noise and walked upstairs to investigate. He was then pistol-whipped by two men and bound with zip ties and duct tape. When the police initially spoke with the older brother, he was unable to provide them with many details about the men he saw. Nevertheless, he testified that he saw the men clearly. When his brother showed him a large number of social media pictures in the hopes of identifying the burglars, the older brother was able to recognize one of the men. He confirmed that he and his brother shared that picture with the lead detective. The lead detective then showed him a different picture of the same man, and the older brother once again identified that man, Mr. Irvine, as one of the burglars. Additionally, the older brother identified Mr. Irvine in the courtroom as one of the men who burglarized him.

{¶14} Carrie Sidoti, an administrative assistant with major crimes, also testified on behalf of the State. It was common for Ms. Sidoti to retrieve, sort, and analyze cell phone records for the detectives in her unit. She testified that she received a number of cell phone records in this matter, including (1) A.A.'s subscriber information; (2) the content of the text messages sent and received on her phone on the night of the burglary; and (3) the content of text

messages exchanged between a 234 area code number ("the 234 number") and Mr. Irvine's mother, the mother of his child, and another individual who identified himself as "GB." The State introduced the cell phone records at trial.

{¶15} A.A.'s subscriber information listed her as the owner of a certain Sprint cell phone account and set forth the cell phone number linked to that account. Her cell phone records showed that, between the hours of 12:00 a.m. and 4:45 a.m. on the morning in question, she exchanged more than 100 text messages with the 234 number. Her text messages described her location at various points in time, the location of the brothers, and possible points of access to gain entry into their home. Meanwhile, the individual corresponding with A.A. gave her instructions, asked questions about the brothers' activities, kept her informed as to when he planned to arrive, and notified her when he was inside the house. Because the police were dispatched to the brothers' house at about 4:30 a.m. for a burglary in progress, the evidence was such that the foregoing text messages immediately preceded and coincided with the burglary.

{¶16} Ms. Sidoti testified that the Summit County Jail maintains a record of phone numbers provided by inmates and, while Mr. Irvine was incarcerated there, he provided the jail with phone numbers for his mother and the mother of his child. The State produced cell phone records for both women, and those records showed that, near the time of the burglary, both women exchanged text messages with the 234 number that had exchanged messages with A.A. Notably, the records showed that, at the same time the 234 number was corresponding with A.A., it also was corresponding with the mother of Mr. Irvine's child. The latter correspondences included the following message, which was sent from the 234 number at 2:27 a.m.: "I dont hate u I hate how u act with me bt I dont hate u I love u [C.]" Meanwhile, the text messages between

the 234 number and Mr. Irvine's mother pertained to Mr. Irvine's daughter and her schedule for the day.

{¶17} The last set of phone records the State produced were associated with an individual who referred to himself in the messages as "GB." The messages between GB and the 234 number involved an exchange of pleasantries and plans to meet. Twice during the exchanges, GB used the name "Von" in connection with the 234 number. For instance, during a text message conversation that occurred on January 1st, the following exchange took place:

[GB]: Happy New Year fam

[The 234 number]: Whodis

[GB]: This von

[The 234 number]: Whodis

[GB]: GB

[The 234 number]: O wassup cuz

The individual using the 234 number never corrected GB when GB asked whether he was speaking with "Von."

{¶18} Mr. Irvine argues that his convictions are based on insufficient evidence because the State failed to prove identity. He argues that the older brother was an unreliable witness because he had schizophrenia, he was unable to give the police a detailed description of the burglars, he admitted that he might have taken sleeping pills on the night of the burglary, and, according to Mr. Irvine, he was under the influence of narcotics while testifying at trial. Mr. Irvine argues that the jury ought not to have considered the older brother's out-of-court identification because it stemmed from an unduly suggestive procedure. Further, he argues that his convictions are based on improper lay testimony. According to Mr. Irvine, he sustained

prejudice when Ms. Sidoti conclusively stated that the 234 number belonged to him. For all of the foregoing reasons, he argues that the trial court erred when it denied his motion for acquittal.

{¶19} Initially, this Court notes that Mr. Irvine's captioned assignment of error only concerns the sufficiency of the State's evidence and the court's denial of his motion for acquittal. He has not separately assigned as error that his convictions are against the manifest weight of the evidence. To the extent his argument occasionally conflates the two legal concepts, the Supreme Court has made clear that "[t]he legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *Thompkins*, 78 Ohio St.3d at 386. "The difference, in the simplest sense, is that sufficiency tests the burden of production while manifest weight tests the burden of persuasion." *State v. Soucek*, 9th Dist. Lorain No. 17CA011226, 2018-Ohio-3834, ¶ 4. Because Mr. Irvine has only challenged the sufficiency of the State's evidence on the issue of identity, any arguments concerning the reliability or believability of the witnesses are not properly before this Court. *See Tucker*, 2015-Ohio-3810, at ¶ 7, quoting *State v. Jones*, 1st Dist. Hamilton Nos. C-120570, C-120751, 2013-Ohio-4775, ¶ 33. This Court limits its review to the issue of sufficiency and the question of whether the State set forth sufficient evidence to prove the element of identity.

{¶20} Viewing the evidence in a light most favorable to the State, a rational trier of fact could have concluded that the State proved, beyond a reasonable doubt, that Mr. Irvine perpetrated the crimes with which he was charged. *See Jenks*, 61 Ohio St.3d 259 at paragraph two of the syllabus. The older brother identified Mr. Irvine, both inside and outside the courtroom, as one of the burglars. Further, the State produced cell phone records tending to show that Mr. Irvine used a cell phone with a 234 area code number, that he was the individual who corresponded with A.A. on the night of the burglary, and that he, with her help, burglarized

the two brothers. *See Taylor*, 2015-Ohio-403, at ¶ 9. Mr. Irvine has not shown that the State failed to produce sufficient evidence on the issue of identity. Thus, this Court cannot conclude that the trial court erred when it denied his motion for acquittal. *See Bulls*, 2015-Ohio-276, at ¶ 6, quoting *Frashuer*, 2010-Ohio-634, at ¶ 33. Mr. Irvine's fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 1

THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN ADMITTING CARRIE SIDOTI'S LAY OPINION OR INFERENCE TESTIMONY LINKING DEFENDANT TO [THE 234 NUMBER] BASED ON MESSAGE CONTENT.

{¶21} In his first assignment of error, Mr. Irvine argues that the trial court erred when it allowed Ms. Sidoti to testify that he was the one who sent text messages from the 234 number. Mr. Irvine argues that Ms. Sidoti was not qualified to draw that conclusion and, by definitively linking him to that number, she usurped the jury's role as the finder of fact. Upon review, this Court rejects his argument.

{¶22} "A lay witness may offer opinions and inferences provided they are both rationally based on his perception and helpful to the jury's understanding of the testimony or determination of a fact in issue." *State v. Morgan*, 9th Dist. Medina No. 07CA0124-M, 2008-Ohio-5530, ¶ 30, citing Evid.R. 701. "The admission or exclusion of evidence rests soundly within the trial court's discretion." *State v. Scheck*, 9th Dist. Medina No. 05CA0033-M, 2006-Ohio-647, ¶ 13. Accordingly, when a defendant challenges the admission of evidence on appeal, this Court generally reviews the trial court's admissibility determination for an abuse of discretion. *Id.* To secure a reversal, a defendant must show both that the court abused its discretion and "that he was 'materially prejudiced' by the [] court's evidentiary ruling." *State v.*

*Ivery*, 9th Dist. Summit No. 28551, 2018-Ohio-2177, ¶ 23, quoting *State v. Martin*, 19 Ohio St.3d 122, 129 (1985).

{¶23} As noted, the State introduced several different sets of phone records through Ms. Sidoti. While asking her about the content of the text messages contained therein, the prosecutor initiated the instant exchange:

> [PROSECUTOR]: Okay. Was there any content in these text messages that ever seemed to identify [Mr. Irvine]?
>
> [DEFENSE COUNSEL]: Objection.
>
> THE COURT: Overruled. You may answer if you know.
>
> [MS. SIDOTI]: There were two different instances where there was a name mentioned.
>
> [THE PROSECUTOR]: What was that name?
>
> [MS. SIDOTI]: Von.

Once the State concluded its examination, defense counsel began cross-examining Ms. Sidoti and asked her additional questions about the identity of the individual using the 234 number. Defense counsel specifically asked Ms. Sidoti if she was "able to determine what name was connected with that phone." When Ms. Sidoti confirmed that she was able to do so, defense counsel asked her who that person might be. Ms. Sidoti then testified that it was Mr. Irvine. She repeatedly testified, upon additional questioning by defense counsel, that she reached her conclusion based strictly on her review of the content of the text messages.

{¶24} Mr. Irvine argues that the trial court erred when it allowed the foregoing testimony. He argues that the testimony was not based on personal knowledge because Ms. Sidoti never saw him use the phone with the 234 number. He claims that Ms. Sidoti essentially testified as an unqualified expert when she linked him directly to the 234 number. Further, he argues that she misled the jury when answering questions about the text messages between GB

and the 234 number. He claims that she made it appear as if the individual using the 234 number had affirmatively identified himself as "Von" when, in fact, he never did so.

**{¶25}** Assuming without deciding that the trial court abused its discretion by allowing Ms. Sidoti to offer the foregoing testimony, Mr. Irvine has not shown that he suffered material prejudice as a result of its admission. *See Ivery*, 2018-Ohio-2177, at ¶ 23, quoting *Martin*, 19 Ohio St.3d at 129. The trial court admitted all of the cell phone records that served as the basis of Ms. Sidoti's testimony. Thus, the jurors could review the records themselves and form their own conclusions about the identity of the individual using the 234 number. As previously noted, the records evidenced exchanges between the 234 number, A.A.'s cell phone number, and the cell phone numbers belonging to Mr. Irvine's mother and the mother of his child. The timing of several of those exchanges was significant, as they coincided with the burglary. Moreover, the content of the exchanges was significant, as many aspects of that content supported the conclusion that the number belonged to Mr. Irvine. Even disregarding Ms. Sidoti's conclusions, the text message records, in conjunction with the older brother's in-court and out-of-court identifications of Mr. Irvine, served as circumstantial evidence of Mr. Irvine's guilt. Mr. Irvine has failed to show that, but for Ms. Sidoti's conclusions, the result in this matter would have been different. *See Ivery* at ¶ 23, quoting *Martin* at 129. Accordingly, this Court rejects his first assignment of error.

## ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN ADMITTING INTO EVIDENCE TEXT MESSAGE RECORDS THAT WERE NOT PROPERLY AUTHENTICATED[.]

{¶26} In his second assignment of error, Mr. Irvine argues that the trial court erred when it admitted cell phone records pertaining to the 234 number because none of the records were properly authenticated. This Court disagrees.

{¶27} "[Appellate courts] review a trial court's determination of authentication for an abuse of discretion." *State v. Moorer*, 9th Dist. Summit No. 27685, 2016-Ohio-7679, ¶ 6. *See also Scheck*, 2006-Ohio-647, at ¶ 13 (evidentiary determinations are generally reviewed for an abuse of discretion). An abuse of discretion indicates that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, this court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶28} "A condition precedent to admissibility is authentication or identification by way of 'evidence sufficient to support a finding that the matter in question is what its proponent claims.'" *State v. Spy*, 9th Dist. Summit No. 27450, 2016-Ohio-2821, ¶ 14, quoting Evid.R. 901(A). "The threshold for admissibility is low." *State v. Hoffmeyer*, 9th Dist. Summit No. 27065, 2014-Ohio-3578, ¶ 18. "The proponent need not offer conclusive evidence as a foundation but must merely offer sufficient evidence to allow the question as to authenticity or genuineness to reach the jury." *State v. Caldwell*, 9th Dist. Summit No. 14720, 1991 WL 259529, *7 (Dec. 4, 1991). "The proponent has the burden to demonstrate a 'reasonable likelihood' the evidence is authentic." *Hoffmeyer* at ¶ 18, quoting *State v. Freeze*, 12th Dist. Butler No. CA2011-11-209, 2012-Ohio-5840, ¶ 65.

{¶29} Before trial, Mr. Irvine stipulated that all of the cell phone records in this case were business records. He agreed that it was unnecessary for the State to subpoena cell phone company representatives to testify that the records were, in fact, their business records. He now

argues, however, that the court erred when it admitted the records through Ms. Sidoti because she could not authenticate them. He notes that the State was unable to obtain any subscriber information for the 234 number and A.A. refused to attribute that number to him. Further, he notes that the State did not set forth any documentation to prove that his mother and the mother of his child owned/used the phone numbers attributed to them during Ms. Sidoti's testimony. In the absence of proper authentication, Mr. Irvine argues that the court erred by admitting the phone records and allowing the State to attribute many of the text messages contained therein to him.

{¶30} Assuming without deciding that Mr. Irvine's stipulation did not relieve the State of its burden to authenticate the cell phone records it introduced, the record does not support the conclusion that the court abused its discretion by admitting them. *See Moorer*, 2016-Ohio-7679, at ¶ 6. Ms. Sidoti testified that she routinely received, sorted, and analyzed phone records from cell phone carriers in connection with investigations conducted by the major crime unit. She explained the different retention policies held by the major cell phone carriers and the different ways in which they produce records requested through search warrants. She identified the cell phone records that the State introduced here as records she received and examined in connection with this matter. With regard to A.A., Ms. Sidoti testified that she was able to review the subscriber information for A.A.'s phone number to confirm that it belonged to A.A. With regard to Mr. Irvine's mother and the mother of his child, Ms. Sidoti testified that she obtained their phone numbers from the information that Mr. Irvine provided to the Summit County Jail. The cell phone records themselves include detailed information about each text message, including its search target, log written notation, final disposition, message source, originating and

terminating numbers, and content. Additionally, the records are uniform in appearance such that the same details are included for each message.

{¶31} As noted, the threshold for authentication is low and, to satisfy it, a proponent "need not offer conclusive evidence as a foundation * * *." *Caldwell*, 1991 WL 259529, at *7. The trial court here reasonably could have concluded that the State "demonstrate[d] a 'reasonable likelihood' the [cell phone record] evidence [was] authentic." *Hoffmeyer*, 2014-Ohio-3578, at ¶ 18, quoting *Freeze*, 2012-Ohio-5840, at ¶ 65. Any question about the reasonableness of the inferences to be drawn from that evidence was an issue of weight rather than admissibility. *See State v. Ohara*, 9th Dist. Summit No. 27342, 2014-Ohio-5532, ¶ 8. As such, this Court rejects Mr. Irvine's argument that the court abused its discretion by admitting the records. Mr. Irvine's second assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 3

IT WAS PREJUDICIAL ERROR FOR THE TRIAL COURT TO ALLOW THE STATE'S DNA EXPERT TO TESTIFY WHEN THE SCIENTIFIC TESTIMONY WAS IRRELEVANT AND THE INFERENTIAL TESTIMONY PREJUDICIAL[.]

{¶32} In his third assignment of error, Mr. Irvine argues that the trial court erred when it allowed the State's DNA expert to offer irrelevant and prejudicial testimony. This Court rejects his argument.

{¶33} "Trial courts have broad discretion in determining the admissibility of expert testimony, subject to review for an abuse of discretion. * * * In general, courts should admit such testimony when material and relevant, in accordance with Evid.R. 702 * * *." *Terry v. Caputo*, 115 Ohio St.3d 351, 2007-Ohio-5023, ¶ 16. "[T]he trial court's gatekeeping function [] requires it to judge whether an expert's testimony is '"relevant to the task at hand" in that it logically advances a material aspect of the proposing party's case.'" *Id.* at ¶ 26, quoting *Valentine v. PPG*

*Industries, Inc.*, 158 Ohio App.3d 615, 2004-Ohio-4521, ¶ 30 (4th Dist.2004), quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). "Evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *State v. Thompson*, 9th Dist. Wayne No. 15AP0016, 2016-Ohio-4689, ¶ 22, quoting Evid.R. 401.

**{¶34}** Lindsey Nelsen-Rausch, a scientist with the Bureau of Criminal Investigation, testified for the State as an expert in forensic DNA analysis. Ms. Nelsen-Rausch received samples of evidence taken from the brothers' home, analyzed the samples for the presence of DNA, and testified about her findings. Near the conclusion of direct examination, the prosecutor asked her whether she had been able to exclude Mr. Irvine's DNA. Over defense counsel's objection, Ms. Nelsen-Rausch testified that she never received his DNA standard, so she was unable to compare his DNA with any of the results she obtained. She also later testified on redirect examination that it is possible for a person to be present at a location and not leave behind any traces of their DNA.

**{¶35}** Mr. Irvine argues that the trial court erred when it allowed Ms. Nelsen-Rausch to testify "that an absence of DNA does not mean absence of [Mr. Irvine] at the scene of the crime." Relying on *State v. Sharier*, 9th Dist. Summit No. 14795, 1991 WL 65125 (Apr. 24, 1991), he argues that her testimony was irrelevant and misleading. Thus, he asserts that its admission constituted reversible error.

**{¶36}** In *Sharier*, this Court affirmed a trial court's decision to exclude expert testimony about a rape exam. *Sharier* at *5. The expert who conducted the exam could not say whether the victim had been raped, and the defendant sought to introduce that testimony at trial. *Id.* In denying the defendant's request to permit that testimony, the trial court stated:

> If you are going to present an expert witness who will add nothing to this case, his opinion is not admissible. If he is to take the stand and testify that upon examination of this girl he cannot conclude that she was raped, however, [he] cannot conclude that she was not raped, his opinion is of no relevance whatsoever. * * * [T]he purpose is to mislead the jury[,] period.

(Alterations sic.) *Id.* On appeal, this Court adopted the trial court's rationale and affirmed its decision to exclude the testimony. *Id.*

**{¶37}** Upon review, this Court cannot conclude that this matter is analogous to *Sharier*. The defendant in *Sharier* intended to argue that a lack of physical trauma to an alleged rape victim was proof that she had not been raped. *See id.* Yet, the expert whose testimony he sought to introduce had no opinion on that matter. The physical exam he conducted was unremarkable, so his testimony would simply have been that he could not form a conclusion either way. *See id.* Because the defendant gave no indication that he sought to call the expert for any other reason, the trial court correctly concluded that the expert's testimony would not have aided the jury.

**{¶38}** Here, the DNA testing that Ms. Nelsen-Rausch performed gave rise to a number of results, all of which she presented to the jury. Those results included the fact that, on a swab taken from a torn piece of duct tape, she uncovered at least two DNA profiles, one of which was consistent with the younger brother and the other of which came from an unknown person. At the very least, her testimony served to corroborate the brothers' testimony that they were restrained with duct tape during a burglary. Accordingly, unlike the expert in *Sharier*, Ms. Nelsen-Rausch was able to offer forensic test results of at least arguable relevance. *See Terry*, 115 Ohio St.3d 351, 2007-Ohio-5023, at ¶ 26.

**{¶39}** To the extent Ms. Nelsen-Rausch testified that it is possible for a person to be present at a location and not leave behind any traces of their DNA, forensic experts routinely testify that various factors can affect their ability to collect trace evidence. *See, e.g., State v.*

*Beavers*, 9th Dist. Summit No. 28485, 2018-Ohio-2172, ¶ 18 (forensic analyst testified that factors can cause gunshot residue to be removed or transferred even when an individual has fired a gun); *State v. Horne*, 9th Dist. Summit No. 25238, 2011-Ohio-1901, ¶ 52 ("The detective testified that the lack of a person's fingerprints inside a vehicle does not mean that the person had not been there" due to the fact that "frequently touched surface areas * * * rarely provide definitive, useable prints."). Ms. Nelson-Rausch was an expert in forensic DNA analysis and, based on her expertise, was able to offer a definitive conclusion in response to a hypothetical that the State posed (i.e., whether it was possible for a person to be present in a location without leaving behind traces of DNA). *Compare Sharier*, 1991 WL 65125, at *5. That hypothetical did not directly pertain to Mr. Irvine, as the trial court never allowed the State to ask whether *Mr. Irvine* might have been at the scene without leaving behind his DNA. *Compare id.* Ms. Nelson-Rausch readily admitted that she never tested Mr. Irvine's DNA. Accordingly, she was unable to offer any testimony that connected him directly to the crime scene. Upon review, Mr. Irvine has not shown that Ms. Nelson-Rausch's testimony misled the jury. Nor has he shown that the concerns identified by the *Sharier* Court were present in the instant matter.

{¶40} Even if this Court were to assume that the trial court ought to have excluded Ms. Nelson-Rausch's testimony, Mr. Irvine also has not explained how its admission prejudiced him. *See Ivery*, 2018-Ohio-2177, at ¶ 23, quoting *Martin*, 19 Ohio St.3d at 129. As noted, Ms. Nelson-Rausch never had Mr. Irvine's DNA, so her testimony never linked him to the crime scene. Meanwhile, the older brother identified Mr. Irvine, both in-court and out-of-court, as one of the burglars. The State also presented the jury with the cell phone records, *see* Discussion, *supra*, all of which served as circumstantial evidence tending to implicate Mr. Irvine. Mr. Irvine has not shown that, but for the admission of Ms. Nelson-Rausch's testimony, the jury would not

have convicted him. *See Ivery* at ¶ 23, quoting *Martin* at 129. As such, his third assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 5

THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT GAVE A CONSCIOUSNESS OF GUILT INSTRUCTION TO THE JURY[.]

## ASSIGNMENT OF ERROR NO. 6

THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT IN GIVING SEVERAL PREJUDICIAL JURY INSTRUCTIONS WHICH PRESUMED DEFENDANT'S GUILT[.]

{¶41} In his fifth and sixth assignments of error, Mr. Irvine argues that the trial court erred in its instructions to the jury. This Court rejects his argument.

{¶42} In general, "[t]his Court reviews a trial court's decision to give or decline to give a particular jury instruction for an abuse of discretion under the facts and circumstances of the case." *State v. Sanders*, 9th Dist. Summit No. 24654, 2009-Ohio-5537, ¶ 45. Yet, a defendant's "[f]ailure to object to a jury instruction limits review of the alleged error to the plain error standard." *State v. Fry*, 9th Dist. Medina No. 16CA0057-M, 2017-Ohio-9077, ¶ 20. Plain error exists only where there is a deviation from a legal rule, that is obvious, and that affected the appellant's substantial rights to the extent that it affected the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). This Court will not construct a plain error argument on behalf of an appellant who has failed to argue plain error on appeal. *State v. Hunter*, 9th Dist. Medina No. 17CA0069-M, 2018-Ohio-4249, ¶ 32.

{¶43} Mr. Irvine takes issue with several of the court's jury instructions. First, he argues that the court erred when it issued a consciousness of guilt instruction. While he acknowledges that he was arrested in Texas, he argues that there was no evidence he "fled" there or knew he was being investigated at the time. Second, Mr. Irvine argues that the court erred

when it instructed the jurors that they could not convict him of aiding and abetting based upon his "mere presence" at the scene of the offense. According to Mr. Irvine, the court essentially instructed the jury to presume that he was at the scene when, in fact, his presence there was never established. Finally, Mr. Irvine argues that the court erred when issuing an accomplice instruction regarding A.A.'s testimony. The instruction referred to A.A. as "*another person* who pleaded guilty to the same crimes charged in this case * * *." (Emphasis added.) According to Mr. Irvine, the italicized portion of the instruction was impermissibly suggestive of his guilt.

{¶44} The record reflects that Mr. Irvine did not object to any of the foregoing instructions when the court read them to the jury. Although he objected to the State's request for a complicity instruction, his objection was based on the prosecutor's decision to wait until the close of the evidence to request the instruction. He never objected to the language of the instruction. Accordingly, Mr. Irvine forfeited his arguments regarding that instruction as well as the consciousness of guilt and accomplice instructions. *See Fry* at ¶ 20.

{¶45} While a defendant who forfeits his objection to jury instructions still may assert a claim of plain error on appeal, Mr. Irvine has not done so.[1] This Court will not construct a claim of plain error on his behalf. *See Hunter*, 2018-Ohio-4249, at ¶ 32. Because Mr. Irvine forfeited his objections and has not set forth a claim of plain error on appeal, this Court rejects his arguments. Mr. Irvine's fifth and sixth assignments of error are overruled.

---

[1] In his reply brief, Mr. Irvine has attempted to assert a plain error argument, strictly with respect to the consciousness of guilt instruction. This Court has recognized, however, that an appellant may not assert a claim of plain error for the first time in a reply brief. *See, e.g., State v. Osborne*, 9th Dist. Lorain No. 15CA010727, 2017-Ohio-785, ¶ 8. Accordingly, Mr. Irvine's argument is improper.

**ASSIGNMENT OF ERROR NO. 8**

DEFENDANT DID NOT RECEIVE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT[.]

**{¶46}** In his eighth assignment of error, Mr. Irvine argues that he received ineffective assistance of counsel. This Court rejects his argument.

**{¶47}** To succeed on an ineffective assistance of counsel claim, the defendant must show both that counsel's performance was deficient and that the deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficiency exists only if counsel's performance fell below "an objective standard of reasonable representation." *See State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. To demonstrate prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Id.* at paragraph three of syllabus. An appellate court need not analyze both prongs of the *Strickland* test if it finds that the defendant failed to prove either prong. *State v. Ray*, 9th Dist. Summit No. 22459, 2005-Ohio-4941, ¶ 10.

Pretrial Motion Practice

**{¶48}** First, Mr. Irvine argues that his counsel was ineffective because he decided not to challenge the reliability of the older brother's out-of-court identification. Although his former counsel filed a motion in limine to exclude that identification, his new counsel withdrew the motion before trial. Mr. Irvine argues that he sustained prejudice as a result of that decision because, had the identification been challenged, it would have been excluded as unreliable.

**{¶49}** When the police confront a victim with a suspect's image before trial,

> "due process requires a court to suppress an identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances." *State v. Davis*, 76 Ohio St.3d 107, 112 (1996). "The rationale for excluding a tainted pretrial

identification is to protect the defendant from misconduct by the state." *State v. Brown*, 38 Ohio St.3d 305, 310 (1988).

(Emphasis omitted.) *State v. Webb*, 9th Dist. Summit No. 27424, 2015-Ohio-2380, ¶ 43. If, however, a victim identifies a suspect on his own and brings that information to the police, the identification is not the result of State action. *Id.* In those instances, the defendant does not require protection from misconduct on the part of the State, so the identification is not subject to suppression. *Id.*

{¶50} As previously noted, the older brother first identified Mr. Irvine in a picture that his younger brother found online. The two brothers then brought that picture to the police, and the police used it to identify Mr. Irvine. Once the police identified Mr. Irvine, they showed the older brother a different picture of Mr. Irvine, and he confirmed that Mr. Irvine had attacked him. The lead detective later testified that the second picture was not placed in an array because the police felt it "would have tainted the array or been suggestive to show an array where [the older brother] already knew the person that was in that array."

{¶51} Because the first identification that the older brother made was not the result of any misconduct by the State, it was not subject to suppression. *See id.* Even if the second picture was subject to suppression, defense counsel might well have decided to forgo a challenge to that identification as a matter of trial strategy. *See State v. Greer*, 9th Dist. Summit No. 26470, 2013-Ohio-4267, ¶ 12; *State v. Toney*, 9th Dist. Wayne No. 04CA0013, 2004-Ohio-4877, ¶ 13 (decision not to file motion to suppress/motion in limine may be considered trial strategy). The older brother was adamant that he clearly saw the men who attacked him and Mr. Irvine was one of those men. "Without some indication in the record that it was objectively unreasonable for counsel [to withdraw the motion in limine]," this Court will not conclude that defense counsel was ineffective on that basis. *Greer* at ¶ 12.

Stipulation Regarding the Cell Phone Records

**{¶52}** Next, Mr. Irvine argues that his counsel was ineffective because he stipulated that the cell phone records admitted herein were business records. He avers that he was prejudiced by his counsel's decision to stipulate "[t]o the extent [the stipulation] waived any further objection to the introduction of the text messages * * *." According to Mr. Irvine, had the State been forced to subpoena a representative from the phone company, he or she would have been able to explain to the jury that the individual operating the 234 number never directly referred to himself as "Von."

**{¶53}** This Court has already determined that the State properly authenticated the cell phone records. *See* Discussion, *supra*. It is unclear what additional objection(s) Mr. Irvine believes his counsel could have raised in the absence of a stipulation, as he has not claimed that the cell phone records were not, in fact, business records. *See* App.R. 16(A)(7). To the extent he argues that a phone company representative could have explained the records to the jury, the record reflects that Ms. Sidoti explained the terminology employed in the records. She specifically testified that an "originating MSID number" refers to the sender of a text message while the "[t]erminating MSID [number]" refers to its recipient. Because the trial court admitted all of the cell phone records, the jury had the ability to review all of the text messages contained therein. The messages themselves evidenced whether the individual using the 234 number ever referred to himself by name and were subject to interpretation by the jury. Accordingly, Mr. Irvine has not shown that he suffered any prejudice as a result of his counsel's decision to stipulate to the records as business records. *See Bradley*, 42 Ohio St.3d 136 at paragraph three of the syllabus.

Stipulation Regarding a Prior Conviction

{¶54} Mr. Irvine also argues that his counsel was ineffective because he stipulated to Mr. Irvine's prior convictions. Mr. Irvine concedes that he was charged with having a weapon under disability such that the existence of his prior conviction for drug trafficking was an element of that offense. *See* R.C. 2923.13(A)(3). He notes, however, that the lead detective read the journal entry of his prior convictions in its entirety. Because the journal entry also included violent offenses related to a firearm, he argues that its admission "undoubtedly led the jury to infer [that he] had the propensity to commit firearm-related crimes." Thus, he argues that he was prejudiced by his counsel's decision to stipulate to his prior convictions.

{¶55} For purposes of his having a weapon under disability charge, Mr. Irvine was only charged under R.C. 2923.13(A)(3). His charge, therefore, required the State to prove that he had been convicted of a drug trafficking offense, not a felony offense of violence. *Compare* R.C. 2923.13(A)(3) *with* 2923.13(A)(2). Given that his prior violent offenses did not form the basis of his weapon under disability charge, this Court agrees that defense counsel engaged in deficient representation when he stipulated to the admission of all of Mr. Irvine's prior offenses. *See Bradley*, 42 Ohio St.3d 136 at paragraph two of the syllabus. Even so, this Court cannot agree that Mr. Irvine has demonstrated resulting prejudice. *See id.* at paragraph three of the syllabus. The jury found Mr. Irvine not guilty of having a weapon under disability. Moreover, while the jury found him guilty of several other firearm-related offenses, both brothers specifically testified that the burglars had guns and pistol-whipped them with their guns. Mr. Irvine has not shown that, but for the admission of his prior convictions, the result in this matter would have been different. *See id.* Thus, this Court rejects his argument to the contrary.

Special Jury Instruction

{¶56} Next, Mr. Irvine argues that his counsel was ineffective for failing to request a special jury instruction on identity. Yet,

> the Ohio Supreme Court has held that:
>
> "A trial court is not required in all criminal cases to give a jury instruction on eyewitness identification where the identification of the defendant is the crucial issue in the case and is uncorroborated by other evidence. A trial court does not abuse its discretion in deciding that the factual issues do not require, and will not be assisted by the requested instructions, and that the issue of determining identity beyond a reasonable doubt is adequately covered by other instructions."

*State v. Johnson*, 9th Dist. Summit No. 25525, 2011-Ohio-3941, ¶ 21, quoting *State v. Guster*, 66 Ohio St.2d 266 (1981), syllabus. While identity was certainly an issue in this case, Mr. Irvine has not explained why the jury instructions, taken as a whole, failed to adequately explain the issue of determining identity beyond a reasonable doubt. *See Guster* at syllabus. This Court declines to formulate an argument on his behalf. *See Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998). Thus, this Court rejects his argument insofar as it concerns his counsel's failure to request a special instruction on identity.

Challenge to Witness Testimony

{¶57} Finally, Mr. Irvine argues that his counsel was ineffective because he did not object to the older brother's testimony after the older brother admitted on the witness stand that he was under the influence of narcotics. Yet, upon review of the older brother's testimony, it is not at all clear that he made that admission. The testimony to which Mr. Irvine cites is, at best, ambiguous, and neither attorney ever asked the older brother whether he had taken drugs. In any event, Mr. Irvine has not explained what type of objection his counsel ought to have raised in response to the older brother's testimony. *See* App.R. 16(A)(7). For example, he has not suggested that the older brother was incompetent to testify. In the absence of any argument,

supported by appropriate legal authority, this Court will not address Mr. Irvine's blanket contention on its merits. *See id.*; *Cardone* at *8. Because Mr. Irvine has not shown that he received ineffective assistance of counsel, his eighth assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 9

THE TRIAL COURT ERRED IN SENTENCING DEFENDANT[.]

{¶58} In his ninth assignment of error, Mr. Irvine argues that the trial court erred when it sentenced him to serve consecutive prison terms on his convictions for aggravated burglary and aggravated robbery. This Court rejects his argument.

{¶59} "In reviewing a felony sentence, '[t]he appellate court's standard for review is not whether the sentencing court abused its discretion.'" *State v. Tucker*, 9th Dist. Lorain Nos. 16CA010963, 16CA010964, 2017-Ohio-4215, ¶ 8, quoting R.C. 2953.08(G)(2). Instead, "an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence" that: (1) "the record does not support the trial court's findings under relevant statutes" or (2) "the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. "Clear and convincing evidence is that 'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Tucker* at ¶ 8, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶60} Initially, we note that Mr. Irvine has withdrawn a portion of his argument on appeal. Mr. Irvine initially included within his assignment of error a challenge to the court's imposition of consecutive sentences on his firearm specifications. The State then responded that the court imposed consecutive sentences in accordance with R.C. 2929.14(B)(1)(g). In light of

the State's response, Mr. Irvine has "withdraw[n] the challenge to sentencing for multiple firearm specifications." Accordingly, this Court will not address that argument on appeal.

{¶61} The trial court sentenced Mr. Irvine to ten years on each of his two aggravated robbery counts and ten years on his aggravated burglary count. Because the State conceded that Mr. Irvine's kidnapping counts were allied with his aggravated robbery counts, the court did not sentence Mr. Irvine on his kidnapping counts. The court ordered the ten-year sentence on the aggravated burglary count to run consecutively with the ten-year sentence on one of the aggravated robbery counts. It then ordered the ten-year sentence on the second aggravated robbery count to run concurrently with that sentence. Mr. Irvine argues that the court erred by imposing the consecutive portion of his sentence. His argument reads as follows:

> In explaining why[] the robbery charge does not merge with the burglary charge, the judge seemingly agreed that the offenses of burglary and robbery were part and parcel of the same conduct and found instead that kidnapping required a separate animus. Still, the judge ran the sentences for burglary and robbery consecutively. Based on the judge's stated findings, burglary should have merged with robbery, and the sentences should run concurrently.

Mr. Irvine asks this Court to reduce his sentence by ten years, due to the fact that all of his counts should have merged.

{¶62} The record reflects that, in setting forth its sentencing decision, the trial court specifically found that Mr. Irvine's offenses for aggravated burglary and aggravated robbery should not merge because Mr. Irvine committed them with a separate animus. The court stated:

> I find that the burglary was committed to commit a theft offense of drugs and/or money, and that the tying up and the restraining of both [brothers] required separate animuses and decisions. * * * I find the fact that [the older brother] was restrained and that [Mr. Irvine] and his * * * co-defendant remained in that residence waiting for [the younger brother] to appear showed that in no way do those offenses merge, and the fact that they are separate victims also indicate there is no merger.

Because the court specifically determined that Mr. Irvine did not possess the same animus when he committed the offenses of aggravated burglary and aggravated robbery, Mr. Irvine is incorrect in his assertion to the contrary.

{¶63} Notably, Mr. Irvine has not conducted an allied offense analysis. He has not set forth the applicable law on allied offenses or an argument as to why he believes his aggravated burglary and aggravated robbery offenses should have merged. *See* App.R. 16(A)(7). His argument is limited to his erroneous reading of the trial court's sentencing determination. This Court, therefore, will not conduct an allied offense analysis on his behalf. *See Cardone*, 1998 WL 224934, at *8. Upon review, Mr. Irvine's assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 7

THE CUMULATIVE EFFECT OF THE TRIAL COURT'S MANY ERRORS CONSTITUTED PREJUDICIAL ERROR TO THE EXTENT DEFENDANT WAS DENIED A FAIR TRIAL[.]

{¶64} In his seventh assignment of error, Mr. Irvine argues that cumulative error deprived him of a fair trial. This Court disagrees.

{¶65} Cumulative error exists only where the errors during trial actually "deprive[d] a defendant of the constitutional right to a fair trial." *State v. DeMarco*, 31 Ohio St.3d 191 (1987), paragraph two of the syllabus. "'[T]here can be no such thing as an error-free, perfect trial, and * * * the Constitution does not guarantee such a trial.'" *State v. Hill*, 75 Ohio St.3d 195, 212 (1996), quoting *United States v. Hasting*, 461 U.S. 499, 508–509 (1983). Moreover, "errors cannot become prejudicial by sheer weight of numbers." *Hill* at 212.

{¶66} After reviewing the record, this Court cannot say that Mr. Irvine's trial was plagued with numerous errors or that his constitutional right to a fair trial was violated. Therefore, Mr. Irvine's seventh assignment of error is overruled.

III.

**{¶67}** Mr. Irvine's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
LYNNE S. CALLAHAN
FOR THE COURT

TEODOSIO, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

WARNER MENDENHALL and BRIAN UNGER, Attorneys at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.